## LAURA LOSO *v.* RAYMOND LOSO
## (AC 33040)

Gruendel, Lavine and Mihalakos, Js.

Argued September 12—officially released November 29, 2011

*John J. Bennett*, for the appellant (defendant).

*John J. Mager*, with whom was *Rachel J. Topham*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. The defendant, Raymond Loso, appeals from the trial court's ruling on the postjudgment motion for contempt filed by the plaintiff, Laura Loso. On appeal, the defendant claims that the court improperly interpreted a clause in the parties' modified separation agreement. We conclude that the trial court's interpretation of that agreement was proper and, therefore, affirm the judgment of the court.

On April 21, 2004, the marriage of the plaintiff and the defendant was dissolved by the court, which incorporated into the judgment the terms of a separation agreement that included, inter alia, an educational support order. See General Statutes § 46b-56c. On November 6, 2006, the court subsequently approved a modification to that agreement concerning the defendant's obligation to pay a portion of the college educational expenses of their daughter, Sarah. The relevant portion of that modified agreement states that the defendant is "to pay for one-half the cost of Sarah's college educational expenses for a four year degree net of scholarships or grants subject to the limitation that said cost shall not exceed the tuition for a full-time residential student at UCONN-Storrs."[1] The agreement further provides that that "provision shall be non-modifiable."

On July 30, 2010, the plaintiff filed a postjudgment motion for contempt alleging that the defendant failed to pay his portion of Sarah's educational expenses in accordance with the modified agreement.[2] According to the court, the plaintiff contended that the defendant was obligated to pay $8697 for the fall 2010 semester: one half of the total semiannual *cost* (meal plan, health insurance, recreation and athletic fees, housing fee and full-time tuition fee, less scholarships and grants) at Sacred Heart University where Sarah had matriculated. The court also stated that the defendant thought he was obligated to pay only $5314 for that period of time: one half of Sarah's semiannual *tuition* at Sacred Heart University (less scholarships and grants). In interpreting the modified agreement, the court found that the

---

[1] The University of Connecticut at Storrs is referred to in this opinion as UCONN-Storrs.

[2] The plaintiff also alleged that the defendant failed to comply with the court's order by wilfully procuring new health insurance coverage for Sarah with a higher deductible and failing to provide automobile insurance for the benefit of Sarah; however, these issues are not challenged on appeal.

defendant's obligation was capped at $4032 for the semester: the *full* amount of *tuition* per semester at UCONN-Storrs.[3] The court also concluded that the defendant was not in contempt regarding educational expenses because the modified agreement "was ambiguous, needed clarification; and . . . the defendant made reasonable efforts to contact the plaintiff to discuss the disputed amount and make payment arrangements."

The defendant now appeals on the basis that the court erred in its determination of his obligation under the cap amount. He contends that he is obligated to pay only one half of the amount of the cap determined by the court, i.e., *one half* of the full amount of tuition for a full-time residential student per semester at UCONN-Storrs.

We begin our analysis by setting forth the applicable standard of review and principles of law. It is well established that a separation agreement, incorporated by reference into a judgment, "is to be regarded and construed as a contract." *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). Accordingly, our review of a trial court's interpretation of a separation agreement "is guided by the general principles governing the construction of contracts." (Internal quotation marks omitted.) Id. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation

[3] In its ruling on the postjudgment motion for contempt, the court originally stated that the defendant was obligated to pay $10,628 toward Sarah's college educational expenses for the fall 2010 semester. However, as it indicated in its corrected, revised and clarified ruling, that figure was based on the court's erroneous finding that the tuition for a full-time residential student at UCONN-Storrs was $16,128 per semester. In its corrected ruling, and further articulation, the court clarified that the tuition for a full-time residential student at UCONN-Storrs was actually $8064 per year and that the defendant's semiannual obligation—capped at the full amount of tuition per semester at UCONN-Storrs—was therefore $4032.

of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) Id. If a contract is unambiguous within its four corners, "the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Id. "When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 711, 980 A.2d 880 (2009).

Accordingly, to determine our standard of review, we first must ascertain whether the modified agreement is ambiguous. This is a question of law over which our review is plenary. See, e.g., *Isham* v. *Isham*, 292 Conn. 170, 181, 972 A.2d 228 (2009). "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . ." (Internal quotation marks omitted.) Id. In contrast, an agreement is ambiguous when its language "is reasonably susceptible of more than one interpretation." Id. Nevertheless, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) Id.

Contrary to the characterization by the court, we conclude that the language in the modified agreement pertaining to the apportionment of Sarah's college educational expenses between the parties is clear and unambiguous. Because one half the cost of educational expenses at Sacred Heart University is greater than the tuition for a full-time residential student at UCONN-Storrs, there is no doubt that the cap amount applies. Nor is there any doubt that the cap amount is the cost of tuition for a full-time residential student at UCONN-Storrs. The first clause of the provision pertaining to

the payment of educational expenses—"[t]he defendant agrees to pay for one-half the cost of Sarah's college educational expenses for a four year degree net of scholarships or grants"—expressly indicates that the defendant is obligated to pay one half of Sarah's educational expenses less scholarships and grants. The second clause of that provision, which is the source of the parties' disagreement, provides that that arrangement is "subject to the limitation that said cost shall not exceed the tuition for a full-time residential student at UCONN-Storrs." The defendant's payment obligation is therefore capped at the *full* amount of tuition for a full-time residential student at UCONN-Storrs.

Yet, the defendant argues that the adjective "one-half" that modifies the noun "cost" in the first clause of the sentence, which determines his obligation when the cap does not apply, simultaneously modifies the noun "tuition" in the second clause of the sentence in which his payment obligation is capped. In this sense, the defendant implicitly asks us to change long settled rules of construction in order to effectuate the modification of a noun by an adjective in an entirely separate clause of the provision. Not even the most generous interpretation of the modified agreement supports the defendant's contention that his obligation to pay his daughter's college expenses is capped at one half of the tuition of a full-time residential student at UCONN-Storrs.

The judgment is affirmed.

In this opinion the other judges concurred.